UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUAN GARZA,

Plaintiff,

v.

UNKNOWN VERVILLE,

Defendant.

Case No. 1:26-cv-1019

Honorable Paul L. Maloney

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The

events about which he complains occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues ECF Prison Counselor Unknown Verville in both his individual and official capacity. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that on October 21, 2025, Plaintiff sent a kite to Defendant Verville about harassment and threats that Plaintiff had received from fellow prisoner Unknown Pierce. (*Id.*, PageID.3.) Plaintiff's complaint does not provide any further information regarding that kite or whether he received a response.

Two days later, on October 23, 2025, Defendant Verville was conducting legal mail rounds when Plaintiff asked Defendant Verville if he could have a "personal conversation" with Defendant Verville in his office.[1] (*Id.*) Defendant Verville responded, "No, I'm busy. Just tell me now." (*Id.*) Plaintiff then told Defendant Verville that prisoner Pierce was threatening to harm Plaintiff, and that Plaintiff feared for his life, safety, and wellbeing. (*Id.*) Defendant Verville asked Plaintiff if Plaintiff needed to go to protective custody. (*Id.*) Plaintiff said that protective custody "would not be necessary" and asked if either he or prisoner Pierce could be moved to another wing of the facility. (*Id.*) Defendant Verville rejected that request and reiterated that Plaintiff could either go to protective custody or get along with prisoner Pierce. (*Id.*) Prisoner Pierce and other prisoners heard the conversation between Plaintiff and Defendant Verville. (*Id.*)

Later that same day, Pierce and other prisoners accused Plaintiff of being "a snitch," and told Plaintiff that they were "going to beat [his] a**." (*Id.*, PageID.4 (asterisks added).) This caused Plaintiff to feel anxious, paranoid, and to fear for his life. (*Id.*)

---

[1] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

On October 26, 2025, Pierce "assaulted" Plaintiff in the dayroom of the housing unit. (*Id.*) Plaintiff alleges that "housing unit staff" were unaware of the assault while it was occurring, but Plaintiff also alleges that those same staff members "intentionally looked away and did not respond[.]" (*Id.*) As a result of the assault, Plaintiff suffered a head injury, pain and bruising on his neck, as well as "physical and mental scars." (*Id.*, PageID.4, 5.) Plaintiff also now suffers from post-traumatic stress disorder. (*Id.*, PageID.5)

Following the assault, Plaintiff informed "housing unit staff" who investigated the incident. (*Id.*, PageID.4.) Plaintiff and prisoner Pierce were both taken to segregation. (*Id.*) Plaintiff was later released from segregation without a misconduct ticket because he was the victim. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendant Verville violated Plaintiff's Eighth Amendment rights by failing to protect Plaintiff. Plaintiff seeks monetary damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Official Capacity Claims**

Plaintiff sues Defendant Verville in both his official and individual capacity. (Compl., ECF No. 1, PageID.2.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S.

332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages only. (Compl., ECF No. 1, PageID.7.) As noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendant Verville in his official capacity. *See Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). Further, to the extent that Plaintiff intended to seek declaratory or injunctive relief, Plaintiff's transfer to another correctional facility moots his injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991).

Accordingly, for these reasons, Plaintiff's claims against Defendant Verville in his official capacity will be dismissed for failure to state a claim.

### B. Eighth Amendment Failure to Protect Claims

Plaintiff avers that Defendant Verville failed to protect Plaintiff and was deliberately indifferent to Plaintiff's safety in violation of the Eighth Amendment. (Compl., ECF No. 1, PageID.5.)

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833.

In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). This standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011). "In determining whether an official was deliberately indifferent, we focus

on the individual official's personal involvement, knowledge, and actions." *Reedy v. West*, 988 F.3d 907, 914 (6th Cir. 2021).

Here, Plaintiff alleges that he told Defendant Verville that prisoner Pierce had threatened Plaintiff with bodily harm. (Compl., ECF No. 1, PageID.3.) Under the subjective prong of the analysis, Plaintiff must show that Defendant Verville knew of, and disregarded, an excessive risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 837. But Plaintiff's allegations show that Defendant Verville did not disregard the alleged risk to Plaintiff's safety. Instead, upon learning of the threats from prisoner Pierce, Defendant Verville offered Plaintiff the option of going to protective custody. (Compl., ECF No. 1, PageID.3.) Plaintiff's allegations show that Defendant Verville was responsive to Plaintiff's concern and offered a solution that would have protected Plaintiff from the threat posed by prisoner Pierce. It was Plaintiff who rejected that solution and decided that such a move "would not be necessary." (*Id.*) Plaintiff's allegations indicate that his preferred solution was that he or prisoner Pierce be transferred to a different wing of the facility. (*Id.*)

Plaintiff's complaint also faults Defendant Verville for failing to "move, intervene, investigate, or at the very least inform housing unit staff to watch for any aggressive conduct and/or any threats from inmate Pierce[.]" (*Id.*, PageID.5.) The fact that Defendant Verville did not offer Plaintiff his preferred solution does not show that Defendant Verville was deliberately indifferent to Plaintiff's safety when Defendant Verville offered Plaintiff a solution that would have protected Plaintiff from prisoner Pierce. Moreover, after Defendant Verville rejected Plaintiff's preferred solution of Plaintiff or prisoner Pierce being transferred to different wings, Verville again gave Plaintiff the option to go to protective custody. (*Id.*, PageID.3.) With Plaintiff's preferred solution rejected and faced with the choice of either moving to protective custody or staying with prisoner Pierce, it was Plaintiff who made the choice to stay with prisoner Pierce. (*Id.*)

Plaintiff also suggests that Defendant Verville violated Plaintiff's constitutional rights when he "forced" Plaintiff to discuss this issue in the unit in front of Pierce and other prisoners. (Compl., ECF No. 1, PageID.3.) Plaintiff alleges that having this conversation in front of Pierce and other prisoners put Plaintiff's safety at risk. (*Id.*)

As an initial matter, it is unclear from Plaintiff's allegations if Defendant Verville was aware of what Plaintiff wanted to discuss before the conversation began. Plaintiff alleges that he had sent a kite to Defendant Verville two days earlier "regarding an issue of being harassed and threatened by inmate Pierce." (*Id.*) Plaintiff then alleges that when he saw Defendant Verville making rounds, Plaintiff told Defendant Verville that he wanted to have a "personal conversation." (*Id.*) These allegations do not show that Defendant Verville knew what Plaintiff wanted to discuss before the conversation began. Additionally, once Plaintiff told Defendant Verville his concern, Defendant Verville immediately offered to move Plaintiff to protective custody. Plaintiff rejected the solution that Defendant Verville proposed, despite knowing that his conversation with Defendant Verville had occurred within earshot of Pierce and other prisoners. In this circumstance, Plaintiff has failed to show that Defendant Verville was deliberately indifferent to an excessive risk to Plaintiff's safety because Defendant Verville offered Plaintiff the option of moving to protective custody.

In addition to allegations directly involving Defendant Verville, Plaintiff alleges that "housing unit staff" were either unaware of the ongoing assault or "intentionally looked away and did not respond[.]" (Compl., ECF No. 1, PageID.4.) Plaintiff asserts that this was a violation of MDOC policy.[2] (*Id.*) Plaintiff also alleges that Defendant Verville is "responsible for housing unit

[2] As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*,

3," the housing unit in which Plaintiff was assaulted, suggesting that Plaintiff seeks to hold Defendant Verville liable based on his supervisory positions. (*Id.*)

As an initial matter, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Here, Plaintiff alleges conduct attributed to "housing unit staff." (Compl., ECF No. 1, PageID.4.) The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir.

---

60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that the unidentified "housing unit staff" violated the MDOC's policies fail to state a claim under § 1983.

2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). And, "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Plaintiff's allegations regarding the actions or inactions of "housing unit staff" are insufficient to show that Defendant Verville was personally involved in the alleged violations of Plaintiff's constitutional rights committed by those unidentified staff members.

To the extent that Plaintiff seeks to hold Defendant Verville liable due to his supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee* [*v. Luttrell*], 199 F.3d [295,] 300 [(6th Cir. 1999)] (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff's complaint contains no allegations to suggest that Defendant Verville "implicitly authorized, approved, or knowingly acquiesced" in the alleged conduct of the "housing unit staff." *Peatross*, 818 F.3d at 242. Aside from the general allegation that Defendant Verville "is responsible for housing unit 3," (Compl., ECF No. 1, PageID.4), there are no allegations in Plaintiff's complaint regarding Defendant Verville's supervisory relationship with "housing unit staff" to support a claim that Defendant Verville is liable for the acts of those staff members.

Accordingly, for all of the reasons set forth above, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendant Verville for failure to state a claim.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: August 12, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge